LUBBOCK MORTGAGE & INVESTMENT COMPANY, INC.,
Appellant,

v.

Bill THOMAS, Appellee.

No. 7126.

Court of Appeals of Texas,
El Paso.

Dec. 23, 1981.

Davis & Lanehart, Paula Lanehart, David A. Hess, Lubbock, for appellant.

Freeman & Hyde, John G. Hyde, Midland, for appellee.

Before STEPHEN F. PRESLAR, OSBORN and SCHULTE, JJ.

## OPINION

SCHULTE, Justice.

This is a case brought under the Texas Deceptive Trade Practices Act, hereinafter referred to as DTPA. Appellee (Plaintiff below) was granted judgment in the sum of $11,000.00 actual damages and for $2,640.00 attorney's fees by the Court sitting without a jury. Appellant was the Defendant below. We affirm.

In April, 1979, Appellee contacted Appellant in response to a newspaper ad and sought to borrow money for the purchase of a laundromat in Midland, Texas. Appellee and Appellant thereafter entered into a "contract for services." The contract provided that Appellee, as borrower, would pay Appellant, as lender, certain fees in connection with obtaining a loan initially for $50,000.00 and later increased to $100,000.00.

In May, July and early August, 1979, Appellee issued various checks and money orders for loan fees in the total amount of $11,000.00, payable to Lubbock Mortgage, Lubbock Mortgage and Gerhardt, to Gerhardt, to Oliver Cates and to Somerset Insurance Company. Sums paid to Lubbock Mortgage as the loan payee totaled $3,500.00; to Lubbock Mortgage and Gerhardt $2,500.00; to Oliver Cates $500.00; and to Somerset Insurance $2,000.00.

As part of the transaction, Appellee signed a letter from Gerhardt Investment Group which provided for payment of certain fees by Appellee, and informed Appellee that a loan commitment could be arranged with a correspondent investor. The letter also provided that Gerhardt would be the exclusive representative for the financing. On July 18, 1979, Appellee signed a letter of commitment for a $100,000.00 loan from Somerset Insurance Company, which provided for payment of an additional $2,000.00 fee.

Appellee's complaint, in the Court below, was that he was induced by Appellant's representations to pay fees totaling $11,000.00 but was never furnished a loan. Appellant's response essentially is that it was not a lender but a broker, that it had received $3,500.00 but that the remainder of the $11,000.00 was remitted to the actual financing agencies which were not made parties to this suit.

In its findings and conclusions, the Court below found in part that Appellant had publicly advertised the availability of loans

and financing through its offices, that the Appellant represented to Appellee that loan services would be provided to Appellee which were never provided, that Appellee, induced by statements and assurances of Appellant's agents and employees, paid Appellant for services for which Appellee received no benefit, and that Appellee suffered actual damages of $11,000.00, together with $2,640.00 attorney's fees, to which Appellee was entitled under Section 17.50 of the DTPA.

Although Appellee's petition was not filed until November 21, 1979, the alleged deceptive acts occurred between April and early August, 1979. Accordingly, the statutory provisions which govern this suit are those that were in effect at the time the alleged deceptive acts occurred, that is, those provisions that were in effect following the 1977 Amendments and prior to the effective date of the 1979 Amendments. *Riverside National Bank v. Lewis*, 603 S.W.2d 169, 172 (Tex.1980); *Woods v. Littleton*, 554 S.W.2d 662, 666 (Tex.1977).

Points of error one and three essentially attack the eligibility of Appellee to qualify as a consumer under the DTPA, alleging in the first instance that Appellee failed to prove and the Court failed to find that Appellee was a consumer and, in the second, that Appellee failed to prove and the Court failed to find that Appellee acquired by purchase or lease any goods or services for use from Appellant. Although the wording of the two points would suggest "no evidence" points, we will consider them both as "no evidence" and "insufficient evidence" points and will consider the two together.

■ In reviewing a no evidence point, only evidence and reasonable inferences therefrom supporting the findings are considered. If there is probative evidence, more than a scintilla, to support the finding, the no evidence argument should be overruled. *Glover v. Texas General Indemnity Company*, 619 S.W.2d 400 (Tex.1981); *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965).

■ In reviewing factual insufficiency points, the Court of Appeals will consider all of the evidence in the record that is relevant to the facts being challenged. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951), *Garza, supra.*

In *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535 (Tex.1981), the Supreme Court said that there are at least two requirements that must be established for a person to qualify as a consumer under the DTPA:

1. That the person must have sought or acquired goods or services by purchase or lease, and

2. That the goods or services purchased or leased must form the basis of the complaint.

Appellant relies principally on *Riverside, supra,* wherein it was held that an attempt to acquire money or the use of money was not an attempt to acquire "services." But the Court there refused to pass upon the issue of whether a bank's misrepresentation concerning its collateral activities incidental to obtaining a loan could constitute a deceptive act because such claim there was presented hypothetically and was not supported by the evidence. Appellant, here, argues that this case falls within the majority's holding in *Riverside* that a loan transaction is not a purchase of goods or services. However, the case here fits more readily the area of deceptive practices left open in *Riverside.* Appellant referred to itself at trial, not as a bank or other direct lender, but as a loan broker. Thus, in consideration for the value it received, Appellant could and did offer only a "service" as that term is used in *Riverside.* Furthermore, Appellee complains here not only that he received no loan, but also that Appellant had represented its services to have characteristics, uses, benefits and standards which it did not have, and that its agreement with Appellee conferred or involved rights which it did not have. Therefore, Appellee's complaints are directed to the quality of services he had paid for in connection with the extension of credit he sought. Appellant, itself, insisted throughout the trial that it was not a lender but had only its services as a loan broker to sell.

Appellee did not have to plead specifically that he was a consumer. It is sufficient that he plead and prove facts that show he is a consumer. *Ridco, Inc. v. Sexton*, 623 S.W.2d 792 (Tex.App.1981). Also findings of fact are not conclusive on appeal when the statement of facts appears in the record as it does here. *Stephenson v. Perlitz*, 537 S.W.3d 287 (Tex.Civ.App.—Beaumont 1976, writ ref'd n. r. e.).

We have yet to consider Appellant's contention that Appellee did not establish that such services were purchased for use by Appellee. In that "use" is not defined in the DTPA, it falls under the general rule that in the absence of a statutory definition, words of common usage are given their ordinary meaning. *Artco-Bell Corporation v. City of Temple*, 616 S.W.2d 190 (Tex.1981); *Satterfield v. Satterfield*, 448 S.W.2d 456, 456, (Tex.1969). "Use" has been variously defined as follows: "To put or bring into action or service; to employ for accomplishment of a purpose; to apply to one's service; to avail oneself of." *Otto, Inc. v. Cotton Salvage & Sales, Inc.*, 609 S.W.2d 590, 593 (Tex.Civ.App.—Corpus Christi 1980, writ dism'd). Here, Appellee owned the equipment in a laundromat and sought the loan to acquire the premises in which the equipment was located.

Appellant also cites *Delaney Realty, Inc. v. Ozuna*, 593 S.W.2d 797 (Tex.Civ.App.—El Paso 1980, writ ref'd n. r. e.), for the proposition that Appellee had to prove as part of his case that he was a consumer. We believe that he has. Appellee satisfied the requirements of *Cameron, supra*, as manifested by the statement of facts and findings and conclusions of the Court. Furthermore, his evidence satisfied the use requirement of the DTPA.

Applying the evidentiary standards previously stated, as well as the requirements of *Cameron, supra*, we hold that the evidence is sufficient and establishes that Appellee sought services by purchase and that such services form the basis of his complaint, and that Appellee was a "consumer" under the Act. Appellant's points of error one and three are overruled, both as to "no evidence" and "insufficient evidence."

Appellant's second point of error, in essence, alleges that there was no evidence or insufficient evidence to support a finding that Appellant engaged in deceptive trade practices. We apply the evidentiary standards previously stated in addressing this point. Appellant's business card provides "Loans — Farms — Ranches — Commercial." Its contract with Appellee designated Appellant as "lender." Its newspaper ad makes no mention that Appellant is only a broker. In spite of this, Appellant's president insisted during her trial testimony that Appellant was only a loan broker and not a lending institution, that Appellant never solicited to directly lend money to anyone. This holding itself out as being one thing and in reality being another, its insistence that Appellee increase his loan application thus increasing its fees, the payment of substantial fees between April and early August, 1979, without an acceptable result, all this, when considered in connection with the findings of the trial Court, manifest the deceptive trade practices found by the trial Court. Appellant's second point as to no evidence and insufficient evidence is overruled.

Appellant's fourth point of error asserts that recovery of damages is precluded because Appellee failed to give written notice of his complaint thirty days before filing this suit under Section 17.50A(a). The 1977 Amendments to the DTPA control this case. While such notice is now a prerequisite to filing suit under the 1979 Amendments, it was merely a prerequisite to the recovery of treble damages under the 1977 Amendments, and did not bar actual damages and reasonable attorney's fees. Tex. Bus. & Com.Code Ann. sec. 17.50A (Supp. 1980–1981) at 110. Furthermore, at a pretrial hearing on Appellant's Motion to Strike Pleadings, Appellant agreed to trial of the case on the basis of actual damages and attorney's fees. Appellant's fourth point of error is overruled.

Appellant's fifth point of error is that there is no evidence or, alternatively, insufficient evidence to support the trial Court's finding that Appellee paid $11,000.00 to Appellant and its agents for loan fees. The evidence is undisputed that Appellee issued checks and money orders for loan fees in the amount of $11,000.00, and he pleaded for the return of this amount in his petition.

 Under the DTPA, it is clear that a consumer may recover only his actual damages as recoverable at common law. *Brown v. American Transfer & Storage*, 601 S.W.2d 931 (Tex.1980). Some courts have construed this to mean that a consumer is entitled to the difference in value between that which he parted with and that which he received. *See: United Postage Corp. v. Kammeyer*, 581 S.W.2d 716, 722 (Tex.Civ. App.—Dallas 1979, no writ); *American Transfer and Storage Co. v. Brown*, 584 S.W.2d 284 (Tex.Civ.App.—Dallas 1979), aff'd, 601 S.W.2d 931 (Tex.1980). A more flexible approach was taken in *Woo v. Great Southwestern Acceptance Corporation*, 565 S.W.2d 290, 298 (Tex.Civ.App.— Waco 1978, writ ref'd n. r. e.), where the Court stated:

> We believe the Act was intended to permit the adversely affected plaintiff to recover the greatest amount of "actual damages" he has alleged and established by proof was factually caused by the defendant's conduct.

To the same effect are the holdings in *Rotello v. Ring Around Products Inc.*, 614 S.W.2d 455, 460 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref'd n. r. e.); and *Johnson v. Willis*, 596 S.W.2d 256 (Tex.Civ. App.—Waco 1980), *writ ref'd n. r. e. per curiam, sub nom., Willis v. Johnson*, 603 S.W.2d 828 (Tex.1980). Under either standard cited above, we are persuaded that the Appellee in this case has alleged and proved that he suffered actual damages in the amount of $11,000.00. Therefore, Appellant's fifth point of error is overruled.

Appellant's sixth and last point of error complains that because Appellee was not entitled to recover damages under the DTPA, he is not entitled to recover attor-

ney's fees thereunder. As has been previously determined under points of error one and three, Appellee was entitled to recover damages under the DTPA, and therefore is entitled to recover attorney's fees. Tex. Bus. & Com.Code Ann. sec. 17.50(b) (Supp. 1980–1981). Appellant's sixth point of error is overruled.

The judgment of the trial Court is affirmed.