POOL COMPANY, d/b/a Pool Well Servicing Company, Appellant,

v.

SALT GRASS EXPLORATION, INC., Appellee.

No. 01–84–0352–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Oct. 18, 1984.

Rehearing Denied Nov. 8, 1984.

Frank H. Pope, Jr., Dallas, for appellant.

Carlton E. Curry, Curry & McCarthy, Houston, for appellee.

Before WARREN, COHEN and LEVY, JJ.

## OPINION

WARREN, Justice.

This is an appeal from a judgment rendered in favor of the appellee for appellant's violations of the Texas Business and Commerce Code (Texas Deceptive Trade Practices Act).

The appellant raises four points of error: fundamental error in the trial court's rendering a judgment unsupported by pleadings, error in awarding attorney's fees since no notice was proven as required by statute, error in awarding treble damages for the same lack of notice, and no evidence or insufficient evidence to support the judgment.

The appellant Pool Company is a Texas corporation in the business of supplying equipment and services for the drilling of oil wells. Appellee Salt Grass Exploration, also a Texas corporation, is an independent oil exploration firm.

On and before October 2, 1980, the appellant and appellee negotiated a contract under which the appellant would supply a drilling rig and personnel to operate the rig for the drilling of a well in Sutton County, Texas. Randall Shawell, president of appellee corporation, and Scott Robinson, a consulting engineer, communicated with representatives of the appellant corporation and Ensearch Corporation concerning the details of the drilling operation on several occasions prior to entering into the contract.

On October 2, 1980, the appellant and appellee executed a written contract encompassing the terms of the pre-contract negotiations. Under the terms of the contract, the appellant would supply a drilling rig, including a "Bowen S-3 Power Swivel" rotary drive. The "power swivel" rig was to be used to drill a hole to a depth of 3,600 feet. The appellee was also to provide certain equipment and to pay $4,500 per work day for appellant's services.

On or about October 9, 1980, the appellant corporation "rigged up" the drilling equipment and "spudded" the well at the appellee's well site. The appellee retained Gerald Dean "Curly" Meredith as an on-site observer. After several days of limited progress, operations were terminated at a depth of 252 feet. The appellant "rigged down" the drilling equipment and requested payment of approximately $39,000 for services rendered appellee prior to the termination of drilling of the appellee's well. The appellee made the payment as requested and shortly thereafter filed suit in the court below.

The appellee's petition sought actual damages in the amount of $39,119.27 plus statutory treble damages and attorney's fees under the Texas Business and Commerce Code. After a nonjury trial, the court entered a judgment in favor of appellee in the amount of $39,119.27 actual damages, $2,000 in statutory damages, plus $13,000 in attorney's fees.

In his first point of error the appellant argues that the trial court fundamentally erred in rendering a judgment that did not conform to the pleadings.

The appellee's petition alleged, among other things:

### IV.

Plaintiff entered into said contract with Defendant based on the *representations* of Defendant and his agents as to their quality of workmanship and ability to perform and drill such well.

At the time of the execution of said contract *Defendant's agents assured Plaintiff* and its agents that Defendant was well familiar with the area in which the well was to be drilled and the Defendant's equipment was entirely capable to drill such well.

\*     \*     \*     \*     \*     \*

### VI.

Plaintiff relied upon *Defendant's fraudulent representations* to enter into said drilling contract and as a result of Defendant's breach of said contract Plaintiff has been caused to suffer monetary losses in the amount of at least $39,119.27.

### VII.

Plaintiff would further show that *Defendant's actions and misrepresentations regarding the drilling rig's ability to perform constitute a deceptive trade practice violation of Article 17.45(5) and Article 17.46(b)(23)*, Texas Business and Commerce Code, in which a fraudulent, misleading or deceptive act or practice includes "the failure to disclose information concerning goods or services which was known at the time of the transaction, if such failure to disclose information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed. [sic] Plaintiff maintains that had he known the capabilities and limitations of Defendants [sic] drilling rig and had these capabilities and limitations been made known to Plaintiff, he would never have entered into the said Drilling Contract with Defendant.

Plaintiff further states that defendant knowingly and intentionally misrepresented the limitations and capabilities of his drilling rig. Accordingly, Plaintiff seeks three times the amount of his actual damages pursuant to Article 17.50(b)(1) Texas Business and Commerce Code. (emphasis added)

The court's judgment recited that the court "is of the opinion and finds that:"

The Plaintiff has established its claim under the Deceptive Trade Practices Act, and that, the Plaintiff is therefore entitled to recover of and from the Defendant the sum of THIRTY–NINE THOUSAND ONE HUNDRED NINETEEN AND 27/100 ($39,119.27) DOLLARS in actual damages, TWO THOUSAND AND NO/100 ($2,000.00) DOLLARS in additional statutory damages and THIRTEEN THOUSAND AND NO/100 ($13,000.00) DOLLARS in attorney's fees, as damages for violations under the Deceptive Trade Practices Act. It is therefore,

ORDERED, ADJUDGED and DECREED by the Court that SALT GRASS EXPLORATION, INC., Plaintiff, have and recover of and from the Defendant, POOL COMPANY D/B/A POOL WELL SERVICING COMPANY, the sum of FORTY–ONE THOUSAND ONE HUNDRED NINETEEN AND 27/100 ($41,119.27) DOLLARS together with attorney's fees in the sum of THIRTEEN THOUSAND AND NO/100 ($13,000.00) DOLLARS, with interest thereon at the rate of nine (9%) percent per annum from

the date of this Judgment until paid, together with all costs of Court in this behalf expended.

We find the pleadings were sufficient to support the judgment.

The appellant contends in his second and third points of error that the trial court erred in awarding statutory treble damages and attorney's fees since the plaintiff failed to prove the required notice pursuant to sec. 17.50A(a), Tex.Bus. & Com.Code.

The statute provides as follows:

(a) As a prerequisite to filing a suit seeking damages under Subdivision (1) of Subsection (b) of Section 17.50 of this subchapter against any person, a consumer shall give written notice to the person at least 30 days before filing the suit advising the person of the consumer's specific complaint and the amount of actual damages and expenses, including attorneys' fees, if any, reasonably incurred by the consumer in asserting the claim against the defendant.

Tex.Bus. & Com.Code Ann. sec. 17.50A(a) (Vernon Supp.1984).

■ The appellant correctly argues that notice is a prerequisite to filing suit under the DTPA. *See Hollingsworth Roofing Co. v. Morrison*, 668 S.W.2d 872, 875 (Tex. App.—Dallas 1984, no writ); *Blumenthal v. Ameritex Computer Corporation*, 646 S.W.2d 283, 286 (Tex.App.—Dallas 1983, no writ); *Lubbock Mortgage and Investment Co., Inc. v. Thomas*, 626 S.W.2d 611, 614 (Tex.App.—El Paso 1981, no writ); *Jim Walter Homes, Inc. v. Geffert*, 614 S.W.2d 843 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.).

Appellant is incorrect, however, in asserting that failure to plead and prove notice, in the absence of defendant's objection as to lack of notice, is fatal to a cause of action brought under the DTPA. Appellant filed no special exceptions to appellee's petition, it filed no plea in abatement, it did not object to testimony pertaining to appellee's cause of action under the DTPA or as to attorney's fees, and it filed no trial court motions expressing disagreement with the pleadings or the testimony. Rule 90 of the Rules of Civil Procedure provides that any defect, omission or fault in a pleading, either of form or substance, which is not pointed out by exception, in writing, and brought to the attention of the trial court, shall be deemed waived by the party seeking reversal on such account.

■ The pleading and proof of notice under section 17.50A of the DTPA is not proof of the claim asserted, but merely a prerequisite to bringing the suit on the claim. Its purpose is to facilitate the settlement of claims by giving the alleged wrongdoer an opportunity to compromise the claim rather than expose itself to a claim for additional damages and attorney's fees allowed by the Act. Appellant may not initially claim on appeal that he was deprived of that right.

■ Moreover, in order to contest a party's right to sue, an objection must be made by a plea in abatement in the trial court and the issue cannot be urged for the first time on appeal. That principle has been consistently followed by Texas courts. *Regal Construction Co. v. Hansel*, 596 S.W.2d 150, 151 (Tex.Civ.App.—Houston [1st Dist.] 1979, no writ); *Rimco Enterprises, Inc. v. Tex. Electric Service*, 599 S.W.2d 362 (Tex.Civ.App.—Ft. Worth 1980, writ ref'd n.r.e.) (failure to object that corporation whose charter had been forfeited had no capacity to sue or defend); *Gonzales v. Gonzales*, 484 S.W.2d 611 (Tex.Civ.App.—El Paso 1972, no writ) (failure to object to averment of residence requirement in divorce case); *Kaherl v. Kaherl*, 357 S.W.2d 622 (Tex.Civ.App.—Dallas 1962, no writ); *Lobstein v. Watson*, 186 S.W.2d 999 (Tex.Civ.App.—Eastland 1945, no writ) (failure of real estate dealer suing for commission to allege that he was licensed).

■ As appellant made no objection in the trial court concerning appellee's failure to plead and prove 30 days notice before filing suit, as required by section 17.50A(a), all objections were waived.

Appellant's second and third points of error are overruled.

Appellant contends in point of error number four that there was no evidence, or alternatively, that there was insufficient evidence to support the trial court's findings that appellant represented to appellee both that its services would be of a particular standard when they were of another, and that its drilling rig would have characteristics, uses, and benefits that they did not have.

In reviewing the appellant's "no evidence" point, "only evidence and reasonable inferences therefrom supporting findings are considered. If there is probative force, more than a scintilla, to support the finding, the no evidence argument should be overruled." *Lubbock Mortgage & Investment Company, Inc., supra,* at 613. Here, the record, viewed in a light most favorable to the finding, contains more than a scintilla of evidence that the appellant represented that the "power swivel" drilling rig was capable of drilling a 3,600 foot deep well in Sutton County, Texas when, in fact, such a rig was incapable of drilling such a well. Testimony by Randall Shawell, president of appellee corporation, revealed that these representations were made, and Scott Robinson, a consulting engineer, testified that the rig used was incapable of performing the work.

The record also contains more than a scintilla of evidence that the appellant represented that those services were of a particular standard when they were of another. "Standard" is not defined by statute or case law but would seem to denote a "definite level or degree of quality that is proper and adequate for a specific purpose." Webster's *Third New Inter'l Dictionary 2223* (1976 ed.). The record is clear that the appellee contracted for drilling services to a depth of 3,600 feet. The record also shows that the services rendered fell short of the specific depth contracted for.

In reviewing factual sufficiency, this court will consider all of the evidence in the record that is relevant to the facts being challenged. *Lubbock Mortgage & Investment Company, Inc., supra,* at 613; *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951). Here again, the record viewed as a whole demonstrates support for the proposition that the drilling rig was represented as capable of drilling wells in Sutton County, Texas when, in fact, the rig was incapable of doing so. The representative of the appellant corporation, Mr. Tinney, admitted during cross examination that this drilling rig was never used again to initiate drilling in Sutton County after the failure at appellee's site. The appellant's witness Sidney Meeks, the on-site foreman, admitted that the "power swivel" rig was ordinarily used on *existing* wells as a "work over" rig rather than as a tool to drill oil wells from surface to well.

The assertion by the appellant that the cause of failure of the "power swivel" rig was the appellee's refusal to pump greater volumes of water into the well to enhance "circulation" is directly contradicted by the appellee's engineer's testimony. Mr. Robinson testified that pumping greater volumes of water would not have assisted "circulation" and that the real cause of the shutdown was the use of a "power swivel" rig.

The record also supports the finding that the appellant's services were not of the quality represented. The testimony supporting this finding is that previously discussed concerning the characteristics of the drilling rig. The appellant's "services" consisted of furnishing labor in connection with the use of the "power swivel." Since the "power swivel" failed, there was some evidence that the services rendered were fundamentally substandard.

Appellant's fourth point of error is overruled.

Affirmed.